UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                          :

IN RE STATE STREET BANK AND TRUST  :
CO. ERISA LITIGATION                       :
                                          :

This document relates to:             :     07 Civ. 8488 (RJH)
                                          :

07 Civ. 8488                         :
07 Civ. 9319                         :
07 Civ. 9687                         :
                                          :
-----------------------------------------------------------X
                                          :

NASHUA CORPORATION PENSION PLAN  :
COMMITTEE et al.,                       :
                   Plaintiffs,       :
                                          :

v.                                   :
                                   :     08 Civ. 0265 (unassigned)

STATE STREET BANK AND TRUST      :
COMPANY, STATE STREET GLOBAL    :
ADVISORS, INC., AND JOHN DOES 1-20,  :
                                          :
                   Defendants.     :
                                          :
-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO TRANSFER VENUE
## PURSUANT TO 28 U.S.C. § 1404

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

ARGUMENT .......................................................................................................................6

I.   THESE ACTIONS SHOULD BE TRANSFERRED TO THE DISTRICT OF
     MASSACHUSETTS PURSUANT TO 28 U.S.C. § 1404 .......................................6

A.   Legal Standard ........................................................................................................ 6

B.   These Actions Could Have Been Brought In The District Of Massachusetts ...................... 6

C.   For The Convenience Of The Parties And Witnesses And In The Interest Of Justice,
     These Cases Should Be Transferred To The District Of Massachusetts................................ 7

         1.   The Location Of Party And Non-Party Witnesses And The Availability Of
              Compulsory Process Both Favor A Transfer .................................................. 7

         2.   Massachusetts Is The Locus Of Operative Facts ......................................... 12

         3.   The Parties' Choice Of Law Provisions Likewise Favor Transfer ............................ 13

         4.   The Convenience Of The Parties Favors Transfer....................................... 14

         5.   The Majority Of The Relevant Documents Are In Massachusetts ............................ 16

         6.   Plaintiffs' Choice Of Forum Is Due Little Deference................................. 17

         7.   Transfer Will Serve The Interest of Justice ............................................... 18

CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

## CASES                                              Page(s)

*Berman* v. *Informix Corp.*, 30 F. Supp. 2d 653 (S.D.N.Y. 1998).....................................................7

*Bordiga* v. *Directors Guild of Am.*, 159 F.R.D. 457 (S.D.N.Y. 1995) ............................................8

*Butcher* v. *Gerber Prods. Co.*, No. 98 Civ. 1819, 1998 WL 437150
    (S.D.N.Y. Aug. 3, 1998)....................................................................................... passim

*Cartier* v. *D & D Jewelry Imps.*, 510 F. Supp. 2d 344 (S.D.N.Y. 2007)............................... passim

*Chemung Canal Trust Co.* v. *Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991).....................14

*Coker* v. *Bank of America*, 984 F. Supp. 757 (S.D.N.Y. 1997).....................................................17

*Colida* v. *Panasonic Corp. of N. Am.*, No. 05 Civ. 5791, 2005 WL 3046298
    (S.D.N.Y. Nov. 10, 2005)...................................................................................................19

*Columbia Pictures Indus., Inc.* v. *Fung*, 447 F. Supp. 2d 306 (S.D.N.Y. 2006)...........................20

*Dardaganis* v. *Grace Capital Inc.*, 889 F.2d 1237 (2d Cir. 1989) .................................................14

*Dostana Enters. LLC* v. *Fed. Express Corp.*, No. 00 Civ. 0747, 2000 WL 1170134
    (S.D.N.Y. Aug. 16, 2000).............................................................................................18, 20

*Filmline (Cross-Country) Prods.* v. *United Artists Corp.*, 865 F.2d 513
    (2d Cir. 1989)......................................................................................................................13

*Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101 (1989) ........................................................14

*Fuji Photo Film Co.* v. *Lexar Media, Inc.*, 415 F. Supp. 2d 370 (S.D.N.Y. 2006) ...................8, 16

*Glass* v. *S&M NuTec, LLC*, 456 F. Supp. 2d 498 (S.D.N.Y. 2006) .................................................6

*In re AtheroGenics Sec. Litig.*, No. 05 Civ. 00061, 2006 WL 851708
    (S.D.N.Y. Mar. 31, 2006) .....................................................................................18, 19, 20

*In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164
    (E.D.N.Y. 2006)....................................................................................................................8

*In re Warrick*, 70 F.3d 736 (2d Cir. 1995).....................................................................................18

*Hernandez* v. *Graebel Van Lines*, 761 F. Supp. 983 (E.D.N.Y. 1991)..........................................14

*Hershman* v. *UnumProvident Corp.*, No. 06 Civ. 5604, 2007 WL 1217271
(S.D.N.Y. Apr. 25, 2007)............................................................................................7, 12

*Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)...........................................................14

*Laborers Local 100 & 397 Pension Fund* v. *Bausch & Lomb Inc.*,
No. 06 Civ. 1942, 2006 WL 1524590 (S.D.N.Y. June 5, 2006)................................13, 15, 17

*Mindset Ltd.* v. *Quality Controlled Biochemicals, Inc.*, No. 99 Civ. 6070,
2000 WL 28167 (S.D.N.Y. Jan. 14, 2000) ...........................................................................12

*Mitsui Marine & Fire Ins. Co.* v. *Nankai Travel  Int'l Co.*, 245 F. Supp. 2d 523
(S.D.N.Y. 2003)......................................................................................................................20

*O'Hopp* v. *ContiFinancial Corp.*, 88 F. Supp. 2d 31 (E.D.N.Y. 2000)..........................................18

*Quan* v. *Computer Sciences Corp.*, Nos. 06-3927, -5100, 2008 WL 111167
(E.D.N.Y. Jan. 8, 2008) .................................................................................... passim

*Royal Ins. Co. of Am.* v. *Tower Records,  Inc.*, No. 02 Civ. 2612,
2002 WL 31385815 (S.D.N.Y. Oct. 22, 2002)......................................................................13

*Royal & Sunalliance* v. *British Airways*, 167 F. Supp. 2d 573 (S.D.N.Y. 2001) ...................18, 19

*Schiavone Constr. Co.* v. *City of New York*, 99 F.3d 546 (2d Cir. 1996) ....................................14

*SMS Sys. Maint. Servs., Inc.* v. *Digital Equip. Corp.*, No. 95 Civ. 9998,
1996 WL 74740 (S.D.N.Y. Feb. 20, 1996).............................................................12, 13, 16

*Stewart Org., Inc.* v. *Ricoh Corp.*, 487 U.S. 22 (1988) ................................................................7

*Strauss* v. *West Highland Corp.*, No. 00 Civ. 01184, 2000 WL 1505957
(S.D.N.Y. Oct. 6, 2000).........................................................................................................7

*Strougo* v. *Brantley Capital Corp.*, 243 F.R.D. 100 (S.D.N.Y. 2007)...........................................13

*Thomalen* v. *Marriott Corp.*, No. 89 Civ. 2527, 1990 WL 113181
(S.D.N.Y. Aug. 3, 1990)........................................................................................................13

*Van Dusen* v. *Barrack*, 376 U.S. 612 (1964) ...............................................................................6

*Viacom Int'l, Inc.* v. *Melvin Simon Prods., Inc.*, 774 F. Supp. 858
(S.D.N.Y. 1991)......................................................................................................................8

## STATUTES

28 U.S.C. § 1104(a) ............................................................................................. passim

29 U.S.C. § 1132(e)(2).............................................................................................6

## MISCELLANEOUS AUTHORITIES

*Memorial Hermann Healthcare Sys.* v. *State Street Bank & Trust Co.*,
    No. 07 Civ. 4089 (S.D. Tex.)................................................................................2, 20

*Nashua Corp. Composite Pension Trust* v. *State Street Bank & Trust Co.*,
    No. 07 Civ. 12021 (D. Mass.)...........................................................................5, 7, 20

U.S. Federal Court Management Statistics ....................................................................19

1A Fed. Proc. § 1:839 (West 2007) ...........................................................................18

Defendants State Street Bank and Trust Company ("SSBT") and State Street Global Advisors, Inc. (collectively, "State Street") hereby submit this memorandum of law in support of their motion to transfer venue to the District of Massachusetts in the four above-captioned cases.[1]

## PRELIMINARY STATEMENT

Plaintiffs in the four actions currently before the Court are representatives of three individual retirement plans purporting to sue on behalf of a class of similarly situated plans, and Prudential, a retirement services firm that offered certain State Street funds to retirement plans. Plaintiffs have brought suit against State Street under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that it mismanaged certain active fixed income funds in which the plans invested. The complaints assert that State Street's exercise of investment discretion breached fiduciary duties imposed by ERISA and purport to seek relief on behalf of the plans that allegedly suffered losses as a result.

State Street respectfully requests that this Court transfer all four actions to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). These cases have virtually nothing to do with New York, and at this early stage in the litigation, the Court has an opportunity to transfer the cases to the jurisdiction that is the true center of gravity – Massachusetts. The single most important factor – convenience of the witnesses – weighs heavily in favor of transfer, since the principal party and non-party witnesses are located in Massachusetts, as are the majority of the relevant documents. Indeed, three of the four plaintiffs are located outside of New York: one is headquartered in Massachusetts; another, located just forty miles north of Boston, originally filed suit in the District of Massachusetts; and a third plaintiff, headquartered in Hartford,

---

[1] State Street is simultaneously filing a motion to dismiss or in the alternative for summary judgment in *Prudential Retirement Insurance & Annuity Co. v. State Street Bank & Trust Co.*, No. 07 Civ. 8488.

Connecticut, would presumably find Boston no less convenient than New York.  Massachusetts

is also the locus of operative facts; the complaints' allegations of mismanagement and

misrepresentation by State Street concern conduct that allegedly occurred in Massachusetts, not

New York.   Against these factors, plaintiffs' choice of forum is entitled to little deference

because three of the four plaintiffs have filed suit outside their home forum, and the only plaintiff

in New York has sued as a purported representative in a proposed nationwide class action.

These actions – like another case against State Street that it also seeks to transfer from the

Southern District of Texas to Massachusetts[2] – are at the earliest stages of litigation:   no

discovery on the merits has occurred, nor have any motions been decided.  To avoid unnecessary

inconvenience, the inefficiencies of litigation in multiple jurisdictions and the possibility of

inconsistent outcomes, the interest of justice weighs very strongly in favor of transferring all

these cases to Massachusetts, the site at the heart of the complaints.

## FACTUAL BACKGROUND

### The Parties

#### a.    Plaintiffs

Plaintiff Alan Kober is a Trustee of the Andover Companies Employees Savings and

Profit Sharing Plan ("the Andover Plan"), which provides retirement and other benefits to

employees of Merrimack Mutual Fire Insurance Company ("Merrimack").   (Merrimack First

Amended Class Action Complaint ("Andover Compl.") ¶¶ 13, 14, 27.)  Plaintiff Merrimack, the

designated Plan Administrator, is one of The Andover Companies, which together comprise "a

New England mutual insurance institution" headquartered in Andover, Massachusetts.  (*Id.* ¶ 14.)

---

[2] *See* Notice of Removal, *Memorial Hermann Healthcare Sys. v. State Street Bank & Trust Co.*,
No. 07 Civ. 4089 (S.D. Tex. Dec. 3, 2007); Mot. to Transfer Venue, *Memorial Hermann
Healthcare Sys.*, No. 07 Civ. 4089 (S.D. Tex. Jan. 30, 2008).

Plaintiffs John L. Patenaude, Margaret Callan, and Karen Adams are members of the Nashua Corporation Pension Plan Committee, which is also a plaintiff. (Nashua Amended Class Action Complaint ("Nashua Compl.") ¶ 10.)  The Committee and its members have "fiduciary responsibilities to oversee the retirement assets" of two retirement plans (together, "the Nashua Plan") of the Nashua Corporation, which is headquartered in Nashua, New Hampshire. (*Id.*)  In that capacity, they exercise "discretionary authority and control" over the Nashua Plan and its assets. (*Id.*)  Nashua Corporation maintains offices in Massachusetts, but not in New York. (Declaration of Mark Duggan ("Decl.") ¶ 13.)

Plaintiff Warren Cohen is a Trustee of the Unisystems, Inc. Employees Profit Sharing Plan ("the Unisystems Plan"), which provides retirement and other benefits to employees of Unisystems, Inc. ("Unisystems").  (Unisystems Inc. First Amended Class Action Complaint ("Unisystems Compl.") ¶¶ 12, 13.)  Plaintiff Unisystems, the designated Plan Administrator, is headquartered in New York, New York.  (*Id.* ¶ 13.)

Plaintiff Prudential Retirement Insurance and Annuity Company ("PRIAC") offers pension and retirement products and services to retirement plans.  (Prudential Complaint ("PRIAC Compl.") ¶¶ 6, 11.)  PRIAC is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  (*Id.* ¶ 6.)

**b.**    **Defendants**

Defendant SSBT is a Massachusetts trust company with its principal place of business in Boston, Massachusetts.  (Decl. ¶ 2; *see also* Unisystems Compl. ¶ 14; Andover Compl. ¶ 15; Nashua Compl. ¶ 11; PRIAC Compl. ¶ 7.)   SSBT is a wholly-owned subsidiary of State Street Corporation, a Massachusetts corporation with its principal place of business in Massachusetts. (Decl. ¶ 2 & n.2.)  SSBT provides custodial and other financial services to institutional investors.

(*Id.* ¶ 2.)  State Street Global Advisors ("SSgA") is not a separate legal entity, but rather is the investment management division of SSBT, and is also located in Boston, Massachusetts.  (*Id.* ¶¶ 1 n.1, 3.)  SSgA has approximately 1,137 employees based in the United States, of whom 1,102 work in Massachusetts and 3 in New York.  (*Id.* ¶ 2.) Defendant State Street Global Advisors, Inc., is a financial holding company, but it does not provide any of the investment management services at issue in this case.  (*Id.* ¶ 1 n.1.)[3]

### The Governing Agreements

All of the plaintiffs have entered into investment management or trust agreements with State Street that expressly provide that the agreements shall be governed according to the laws of the Commonwealth of Massachusetts.  (*Id.* ¶¶ 8-10, 14-16, 19-20, 24-26; *id.* Exs. A-F.)

### The Complaints

On October 1, 2007, PRIAC filed suit against State Street, alleging breach of fiduciary duty under ERISA and certain misrepresentations relating to State Street's investment management of two active fixed income funds that PRIAC offered to its retirement plan clients.

On October 17 and 31, 2007, the Unisystems Plan and the Andover Plan filed suit, respectively, against State Street on behalf of a putative class of ERISA plans, alleging breach of fiduciary duty under ERISA in connection with all actively managed fixed income funds offered by State Street.[4]  After State Street notified the Court by letter dated November 30, 2007 of its

---

[3] All four complaints name "State Street Global Advisors, Inc." as a defendant.  But that entity does not perform the investment management services at issue here.  Plaintiffs apparently have confused State Street Global Advisors, Inc. with SSgA, a division of SSBT.  (Decl. ¶ 1 n.1.).

The class action complaints additionally name as defendants John Does 1-20, the State Street employees allegedly "responsible for discharging State Street's duties and responsibilities as the Investment Manager" for the funds described in the complaints.  (Unisystems Compl. ¶ 16; Andover Compl. ¶¶ 17, 18; *see also* Nashua Compl. ¶ 13.)

[4] According to the complaints, the Unisystems Plan invested in "Intermediate Bond Fund for Employee Trusts."  (Unisystems Compl. ¶ 13.)  The Andover Plan invested in the "Enhanced

intention to move to dismiss, amended complaints in both actions were filed on December 7, 2007, substituting trustees and plan administrators for each plan as plaintiffs.  Pursuant to an order dated January 7, 2008, these three actions were consolidated for pre-trial purposes.

On October 24, 2007, the Nashua Plan filed suit against State Street in the District of Massachusetts on behalf of a class of nationwide plans, also alleging breach of fiduciary duty under ERISA as well as common law breach of fiduciary duty.  *See* Complaint, *Nashua Corp. Composite Pension Trust v. State Street Bank & Trust Co.* ("*Nashua I*"), No. 07 Civ. 12021 (D. Mass. Oct. 24, 2007).  On November 30, 2007, State Street filed a motion to dismiss for lack of standing and for failure to state a claim.  *See* Mot. To Dismiss, *Nashua I*, No. 07 Civ. 12021 (D. Mass. Nov. 30, 2007).  On January 11, 2008, while State Street's motion was still pending, the Nashua Plan voluntarily dismissed its suit pursuant to Fed. R. Civ. P. 41(a)(1).  *See* Notice of Dismissal, *Nashua I*, No. 07 Civ. 12021 (D. Mass. Jan. 11, 2008).  On January 14, 2008, the Nashua Plan refiled in the Southern District of New York, substituting three trustees and the Plan's Committee as plaintiffs, and an amended complaint was filed on January 30, 2008.[5]

The complaints allege that State Street mismanaged plan assets that were invested in certain actively managed fixed income funds for which State Street served as "investment manager" and "fiduciary."  (Unisystems Compl. ¶¶ 6, 13; Andover Compl. ¶¶ 14, 39; Nashua Compl. ¶ 1; PRIAC Compl. ¶ 15.)  According to plaintiffs, although these funds were "purportedly conservative," State Street imprudently invested the assets in financial instruments backed by "mortgage-backed securities" and "exotic financial instruments" such as

---

Intermediate Bond Fund."  (Andover Compl. ¶ 14.)  The Nashua Plan invested in the "Bond Market Non-Lending Fund."  (Nashua Compl. ¶ 1.)

[5] The *Nashua* action has been referred to this Court as possibly related.  By letter dated January 15, 2008, the parties submitted a proposed order consolidating the *Nashua* action for pre-trial purposes with the three already-consolidated matters.

"derivatives." (Unisystems Compl. ¶¶ 1-2; Andover Compl. ¶¶ 1-2; *see also* Nashua Compl. ¶¶ 1, 3; PRIAC Compl. ¶ 21.) Plaintiffs claim that these investments provoked losses during "[t]he recent collapse of the subprime mortgage industry." (Unisystems Compl. ¶ 4; Andover Compl. ¶ 4.) All four plaintiffs accordingly contend that State Street breached fiduciary duties imposed by ERISA and made various misrepresentations in connection with its investment management of the active fixed income funds named in the complaints. (Unisystems Compl. ¶¶ 1, 31, 75-83; Andover Compl. ¶¶ 14, 33, 76-84; Nashua Compl. ¶¶ 44-52; PRIAC ¶¶ 31-34.)

## ARGUMENT

## I.    THESE ACTIONS SHOULD BE TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS PURSUANT TO 28 U.S.C. § 1404

### A.    Legal Standard

Under 28 U.S.C. § 1404(a), a court may transfer a civil action to another district for the "convenience of parties and witnesses, in the interest of justice." The statute's purpose is to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). A party seeking to transfer venue must show that: (1) the action is one that might have been brought in the proposed transferee forum, and (2) the transfer promotes convenience and justice. *See, e.g.*, *Glass v. S&M NuTec, LLC*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006).

### B.    These Actions Could Have Been Brought In The District Of Massachusetts

As a threshold matter, all four actions currently before the Court could have been brought in the District of Massachusetts. Under ERISA's venue provision, an action may be brought, *inter alia*, in any district where the plan is administered, where the breach took place, or where the defendant resides or may be found. 29 U.S.C. § 1132(e)(2). State Street's principal place of business is in Boston, Massachusetts. (Unisystems Compl. ¶¶ 14-15; Andover Compl. ¶¶ 15-16;

Nashua Compl. ¶¶ 11-12; PRIAC ¶¶ 7-8.)  Venue would therefore be proper in the District of Massachusetts.  Indeed, the *Nashua* plaintiffs originally filed suit there.  *See* Complaint, *Nashua I*, No. 07 Civ. 12021 (D. Mass. Oct. 24, 2007).

> **C.      For The Convenience Of The Parties And Witnesses And In The Interest Of Justice, These Cases Should Be Transferred To The District Of Massachusetts**

Once a proposed transfer satisfies the threshold requirement, courts have broad discretion to grant transfer motions based upon "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The factors that courts typically consider include:  (1) the convenience of the witnesses, (2) the availability of process to compel attendance of unwilling witnesses, (3) the locus of operative facts, (4) a forum's familiarity with the governing law, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the convenience and means of the parties, (7) the plaintiff's choice of forum, and (8) trial efficiency and the interest of justice based upon the totality of circumstances.  *See Strauss v. West Highland Corp.,* No. 00 Civ. 01184, 2000 WL 1505957, at *1 (S.D.N.Y. Oct. 6, 2000); *accord Cartier v. D & D Jewelry Imps.*, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007).  As set forth below, each factor favors transfer of these four pending actions to the District of Massachusetts.

> **1.      The Location Of Party And Non-Party Witnesses And The Availability Of Compulsory Process Both Favor A Transfer**

The convenience of the forum for witnesses "is probably considered the single most important factor in the analysis of whether a transfer should be granted."  *Hershman v. UnumProvident Corp.*, No. 06 Civ. 5604, 2007 WL 1217271, at *3 (S.D.N.Y. Apr. 25, 2007); *accord Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998).  Indeed, the convenience of non-party witnesses "is usually the most important factor to consider in deciding

whether to depart from the plaintiff's choice of forum." *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006). Where key witnesses would be subject to the subpoena power of the proposed transferee court but not the transferor court, their location weighs in favor of transfer. *See, e.g.*, *Bordiga v. Directors Guild of Am.*, 159 F.R.D. 457, 462 (S.D.N.Y. 1995) (granting transfer where several relevant witnesses fell within the subpoena power of the proposed transferee court because the "availability of process to compel the testimony of important witnesses is an important consideration in transfer motions" (internal quotation marks omitted)); *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) (same). When assessing the convenience and availability of witnesses, courts "qualitatively evaluate the materiality of the testimony that the witnesses may provide." *See Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).

Here, nearly 30 key party and non-party witnesses likely to testify about the facts underlying the allegations of the complaints reside and work in Massachusetts. Plaintiffs assert that State Street breached its fiduciary duties under ERISA by investing ostensibly conservative fixed income funds in high-risk mortgage-backed securities and derivative instruments, and by failing to disclose the level of risk associated with such investments. (Unisystems Compl. ¶¶ 1, 80; Andover Compl. ¶¶ 1, 81; Nashua Compl. ¶¶ 1-5, 49-51; PRIAC Compl. ¶ 34.) Because, at bottom, all four cases concern State Street's conduct, the material witnesses at trial will overwhelmingly be current and former employees of State Street.

The non-party witnesses who are subject to compulsory process in Massachusetts, but not in New York, include all the portfolio managers who managed the various bond funds named in the complaints during the relevant period, who would testify about their investment decision-

making.  These former portfolio managers include Robert Pickett, Susan Reigel, and Frank Gianatasio, all of whom reside in Massachusetts.  *Id.*  (Decl. ¶ 29.a.)

State Street expects that other former employees who reside in Massachusetts may also present key testimony in light of their involvement in the investment strategy that plaintiffs now challenge, including Paul Greff, who was Director of Global Fixed Income during the relevant period, and Michael Wands, then Director of North American Fixed Income.  (*Id.* ¶¶ 29.b-c.)

State Street also believes that other non-party witnesses will have material information about the parties' relationships and dealings, such as Erik Saarinen, who was relationship manager for both the Andover and PRIAC accounts; Kimberly Gluck, who served as both a relationship manager and portfolio manager for the Unisystems account; Greg Mulready, a former relationship manager and sales contact for PRIAC; and Joe Dougherty, formerly a member of SSgA's client reporting group, who would testify about reports regularly issued to PRIAC regarding its accounts.  (*Id.* ¶¶ 29.d-g.)  All four of these potential non-party witnesses reside and work in Massachusetts, and none would be subject to compulsory process to appear at a trial in New York.

Further, employees of third-party consultants and advisors such as CitiStreet, LLC ("CitiStreet") and New England Pension Consultants, LLC ("NEPC") would have important testimony about State Street's relationships with the Andover and Nashua Plans, respectively.  (*Id.* ¶¶ 29.h-i.)  CitiStreet employees Ray Dame, Doug Lankow, and Keith Fuller, and NEPC employee Jay Roney would testify about meetings with and presentations to the plans, their role as consultants and advisors, the plans' investment objectives and the processes by which the

plans made investment decisions. (*Id.*)[6] These non-party witnesses all work and reside in Massachusetts, and would be subject to compulsory process there, but not in New York.

Several current State Street employees would also provide central testimony at trial, including members of the relevant client relationship groups responsible for plaintiffs' accounts, who would testify about State Street's relationships with plaintiffs and disclosures made to plaintiffs regarding the funds' investments. The client team members who would likely testify include Marc Brown, Chief Marketing Officer, Larry Carlson and Staci Reardon, co-Heads of U.S. Relationship Management, and the relationship managers for plaintiffs' accounts.[7] (*Id.* ¶ 32.a.) These persons all reside in Massachusetts.

State Street also anticipates that product engineering team members for the actively managed fixed income funds at issue would have relevant testimony at trial. Product engineers at State Street interact with both portfolio managers, in order to develop an in-depth understanding of the funds, and clients, with whom they discuss portfolio strategies. (*Id.* ¶ 32.b.) Product engineers would accordingly testify about the analysis, interpretation and disclosure of the funds' makeup and performance, and include Adele Kohler, Senior Managing Director of Product Engineering, and James Hopkins, Head of U.S. Fixed Income Product Engineering, which covers the active fixed income funds named in the complaints. (*Id.*)

---

[6] CitiStreet's principal place of business is in Quincy, Massachusetts. NEPC is headquartered in Cambridge, Massachusetts. (Decl. ¶ 31.)

[7] Other key employee witnesses who would testify about State Street's relationships with plaintiffs include Jerry Kelly, Head of Sales; Melissa Albonesi, relationship manager for the Unisystems Plan; Dan Farley and Dave Ireland, both Vice Presidents of Asset Allocation; Mark Bergin, relationship manager for the Nashua Plan; William Porter, former consultant liaison for the Nashua Plan; Mark Flinn, relationship manager for the PRIAC account; Sonya Hughes, former relationship manager for the PRIAC account; and Brian Burke, formerly a member of SSgA's client reporting group. (Decl. ¶¶ 32.a.)

As the chart below shows, this is not a case where the location of key witnesses tips slightly in favor of transfer.  It is a case where the tilt is dramatic:

| | | Key Witnesses Who Live In The Boston Area | |
|---|---|---|---|
| 1 | Robert Pickett | Portfolio Manager (Intermediate & Enhanced Intermediate Bond Fund) | Non-party |
| 2 | Susan Reigel | Portfolio Manager (Daily Bond Market & Government Credit Bond Fund) | Non-party |
| 3 | Frank Gianatasio | Head of Asset-Backed Securities, Secured Credit, and Portfolio Manager (SSgA Yield Plus Fund) | Non-party |
| 4 | Paul Greff | Director of Fixed Income | Non-party |
| 5 | Michael Wands | Director of N. American Fixed Income | Non-party |
| 6 | Erik Saarinen | Relationship Manager (Andover and PRIAC) | Non-party |
| 7 | Kimberly Gluck | Relationship Manager & Portfolio Manager (Unisystems) | Non-party |
| 8 | Greg Mulready | Relationship Manager (PRIAC) | Non-party |
| 9 | Joe Dougherty | Client Reporting (PRIAC) | Non-party |
| 10 | Ray Dame | CitiStreet (Andover) | Non-party |
| 11 | Douglas Lankow | CitiStreet (Andover) | Non-party |
| 12 | Keith Fuller | CitiStreet (Andover) | Non-party |
| 13 | Jay Roney | NEPC (Nashua) | Non-party |
| 14 | Marc Brown | Chief Marketing Officer | Party |
| 15 | Jerry Kelly | Head of Sales | Party |
| 16 | Staci Reardon | Co-Head of U.S. Relationship Management | Party |
| 17 | Larry Carlson | Co-Head of U.S. Relationship Management | Party |
| 18 | Melissa Albonesi | Relationship Manager (Unisystems) | Party |
| 19 | Dan Farley | Vice President of Asset Allocation | Party |
| 20 | Dave Ireland | Vice President of Asset Allocation | Party |
| 21 | Mark Bergin | Relationship Manager (Nashua) | Party |
| 22 | William Porter | Consultant Liaison (Nashua) | Party |
| 23 | Mark Flinn | Relationship Manager (PRIAC) | Party |
| 24 | Sonya Hughes | Relationship Manager (PRIAC) | Party |
| 25 | Brian Burke | Client Reporting (PRIAC) | Party |
| 26 | Adele Kohler | Senior Managing Director and Head of Product Engineering | Party |
| 27 | James Hopkins | Head of U.S. Fixed Income Product Engineering (Intermediate, Enhanced Intermediate, Daily Bond Market, & Government Credit Bond Fund) | Party |

Thus, the convenience and availability of numerous key witnesses overwhelmingly favors transfer to the District of Massachusetts. *See, e.g.*, *Butcher v. Gerber Prods. Co.*, No. 98 Civ. 1819, 1998 WL 437150, at *5 (S.D.N.Y. Aug. 3, 1998) (granting transfer where material witnesses were employees of defendant and were located in proposed transferee forum); *accord Quan v. Computer Sciences Corp.*, Nos. 06-3927, -5100, 2008 WL 111167, at *5 (E.D.N.Y. Jan. 8, 2008); *see also Cartier*, 510 F. Supp. 2d at 347 (recognizing that subpoena power is a relevant factor under 28 U.S.C. § 1404(a)). Indeed, two of the four plaintiffs would presumably find Massachusetts a more convenient forum as well. The Andover Plan is offered by Merrimack, which is located in the Commonwealth. (Andover Compl. ¶ 14; Decl. ¶ 7.) Similarly, the Nashua Plan is offered by the Nashua Corporation, headquartered in Nashua, New Hampshire (Nashua Compl. ¶ 10), the presumed reason that it originally filed suit in nearby Boston. *See* Complaint, *Nashua I*, No. 07 Civ. 12021 (D. Mass. Oct. 24, 2007).

As this Court has recognized, the convenience of likely witnesses is the "single most important factor" in deciding a motion for transfer pursuant to 28 U.S.C. § 1404(a). *Hershman*, 2007 WL 1217271, at *3. Here, this factor tips one-sidedly in favor of transfer. *See, e.g.*, *Mindset Ltd. v. Quality Controlled Biochemicals, Inc.*, No. 99 Civ. 6070, 2000 WL 28167, at *5-6 (S.D.N.Y. Jan. 14, 2000) (granting motion to transfer from Southern District of New York to Massachusetts based upon location of operative facts and convenience of defendant's witnesses); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, No. 95 Civ. 9998, 1996 WL 74740, at *1-2 (S.D.N.Y. Feb. 20, 1996) (same).

### 2.    Massachusetts Is The Locus Of Operative Facts

These cases further merit transfer because the underlying conduct at issue took place in Massachusetts. The locus of the operative facts is "traditionally an important factor to be considered in deciding where a case should be tried." *Royal Ins. Co. of Am. v. Tower Records,*

*Inc.*, No. 02 Civ. 2612, 2002 WL 31385815, at *3 (S.D.N.Y. Oct. 22, 2002). To determine the locus of operative facts, courts look to the events giving rise to the claim. *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 107 (S.D.N.Y. 2007).

The funds at issue in each of the complaints were formed in Massachusetts and are managed by fund managers located there. (Decl. ¶¶ 6, 40.) All decisions regarding fund composition, risk management, and investment strategies were made in Massachusetts. (*Id.* ¶¶ 12, 18, 22, 28, 40.) With few if any exceptions, the representations regarding the funds originated in Massachusetts. (*Id.* ¶ 40.) *See, e.g.*, *Quan*, 2008 WL 111167, at *6 (concluding that any alleged breach of fiduciary duty under ERISA occurred where defendant was located); *Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc.* ("*Bausch*"), No. 06 Civ. 1942, 2006 WL 1524590, at *5 (S.D.N.Y. June 5, 2006) (finding that locus of operative facts favored transfer because alleged misrepresentations and omissions were deemed to occur "in the district from which they are transmitted or withheld"). Based upon the material events alleged in the complaints, the locus of operative facts favors transfer of all four actions to the District of Massachusetts. *See, e.g.*, *Butcher*, 1998 WL 437150, at *8 ("Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district."); *SMS Sys.*, 1996 WL 74740, at *1-2 (granting transfer from Southern District of New York to Massachusetts where relevant decisions took place in Massachusetts).

### 3.    The Parties' Choice Of Law Provisions Likewise Favor Transfer

The parties' choice of law is also relevant when assessing motions to transfer. *Filmline (Cross-Country) Prods. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989); *Thomalen v. Marriott Corp.*, No. 89 Civ. 2527, 1990 WL 113181, at *3 (S.D.N.Y. Aug. 3, 1990). Plaintiffs have brought claims under ERISA, a federal statute as to which federal courts are equally competent. *See, e.g.*, *Butcher*, 1998 WL 437150, at *9.

-13-

However, resolution of plaintiffs' claims may, in two ways, require application of Massachusetts law under the express choice of law provisions in the parties' governing agreements.[8] (Decl. ¶¶ 10, 16, 20, 26.) First, because "ERISA abounds with the language and terminology of trust law," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989), courts often cite pertinent state trust law in analyzing ERISA liability, *see, e.g.*, *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991). Second, as the Second Circuit has recognized, ERISA does not "displace[] all of state contract law with respect to *interpreting* ERISA plan documents." *See, e.g.*, *Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1241 (2d Cir. 1989) (emphasis in original). To the extent that plaintiffs' claims call for interpretation of the parties' agreements, they would require application of Massachusetts law. Thus, in the event that questions of state law arise in this litigation, the proposed transferee forum's familiarity with the governing law weighs in favor of transfer.

### 4.     The Convenience Of The Parties Favors Transfer

This litigation should also be transferred to Massachusetts for the convenience of the parties. The only connection to New York is the location of one of the four plaintiffs and, even there, the plaintiff purports to sue as representative of a nationwide class. While courts should "not order a transfer which would merely switch the burden of inconvenience from one party to the other," *Hernandez v. Graebel Van Lines,* 761 F. Supp. 983, 988 (E.D.N.Y. 1991), in this instance, the inconvenience of the forum to State Street as well as other plaintiffs far outweighs any convenience to the single plaintiff with a connection to New York. Indeed, why would any of these Massachusetts, New Hampshire, and Connecticut plaintiffs sue a Massachusetts

---

[8] Under New York's choice of law rules, such provisions are generally recognized and enforced. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Schiavone Constr. Co. v. City of New York.*, 99 F.3d 546, 548 (2d Cir. 1996).

company in New York, over a dispute centered in Massachusetts, in which virtually all of the central witnesses are from Massachusetts? No basis is apparent. Fortunately, the Court has broad discretion and need not rubber-stamp the decision of plaintiffs and their counsel.

First, resolution of the issues raised in the complaints will hinge principally upon the testimony of State Street employees and documents, both located in Boston. (*See* Decl. ¶ 4 (stating that approximately 97% of SSgA's domestic employees work in Massachusetts, while less than 1% work in New York); *id.* ¶ 39.) *See Quan*, 2008 WL 111167, at *1, 6 (granting transfer based in part on convenience of the parties and noting that defendant had only "negligible corporate presence" in New York, where less than 1% of defendant's domestic employees worked in New York, while 6.7% worked in proposed transferee forum). None of the employees for plaintiffs will be principal witnesses on the central issue of whether State Street's investment decisions constituted a breach of fiduciary duty under ERISA. (Decl. ¶ 37.) *See Butcher*, 1998 WL 437150, at *4-7 (convenience of parties favored transfer where principal witnesses resided in or closer to transferee forum).

As for the sole plaintiff located in New York, its convenience necessarily carries less weight since it purports to sue on behalf of a nationwide class of plans (Unisystems Compl. ¶ 17), most of which are not located in this forum (Decl. ¶ 38), and for whose representatives a flight to Boston would be effectively the same as a flight to New York. *See Bausch*, 2006 WL 1524590, at *5 ("Since few of the name[d] plaintiffs live in the SDNY, it really does not matter to [plaintiffs] whether [the case is] tried here" because "for the majority of the plaintiffs, they would have to travel to the forum state anyway, and the difference . . . is hardly a cogent distinction."). State Street estimates that the potential members of the putative class reside in 31 different states, including the District of Columbia, and approximately 86% of the potential class

members are located outside of New York. (Decl. ¶ 38.) These class members would find

Massachusetts just as convenient as New York. *See Butcher*, 1998 WL 437150, at *6 (finding

the fact that 85% of potential class members lived outside New York had the effect of "deflating

the contention that New York is the more convenient forum"). Accordingly, convenience of the

parties favors transfer to Massachusetts.

### 5.    The Majority Of The Relevant Documents Are In Massachusetts

Courts also consider the location of records and whether those records are voluminous in

assessing motions for transfer. *Cartier*, 510 F. Supp. 2d at 347; *see also Fuji Photo Film Co.*,

415 F. Supp. 2d at 374 (noting that document location is "clearly an important consideration"

(internal quotation marks omitted)). Because of the complex financial decisions and

documentation underlying plaintiffs' claims, and the fact that class plaintiffs purport to sue in

connection with several different SSgA funds, the relevant records in this case will be

voluminous. (Decl. ¶ 39.) Putative class plaintiffs admit that the information and documents

upon which their claims are based are, for the most part, "solely in State Street's possession."

(Unisystems Compl. ¶ 9; Andover Compl. ¶ 10; Nashua Compl. ¶ 7.)

All relevant documents under State Street's control are maintained by State Street in its

Boston, Massachusetts office. (Decl. ¶ 39.) *See Fuji Photo Film Co.*, 415 F. Supp. 2d at 374-75

(granting transfer and noting that even with technological advances through 2006, transporting

documents to more distant jurisdiction would "impose[] some incrementally greater burden" on

defendant (internal quotation marks omitted)); *SMS Sys.*, 1996 WL 74740, at *2 (granting motion

to transfer from Southern District of New York to District of Massachusetts where relevant

documents were located in Massachusetts). In addition, any relevant records maintained by the

Andover and Nashua Plans are presumably located at their offices in Andover, Massachusetts

and Nashua, New Hampshire and would be more easily accessed from Massachusetts than from

-16-

New York. Accordingly, the location and likely volume of the relevant records supports transfer of these cases to the District of Massachusetts.

### 6.    Plaintiffs' Choice Of Forum Is Due Little Deference

Plaintiffs' decision to file suit in the Southern District of New York is not entitled to deference. Although a plaintiff's choice of forum may "generally" be entitled deference, *Butcher*, 1998 WL 437150, at *9, any deference is "diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred," *Coker v. Bank of America*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997). *See also Cartier*, 510 F. Supp. 2d at 346 (weight given plaintiff's choice of venue "is significantly diminished where the operative facts have no connection to the chosen district" (internal quotation marks and ellipsis omitted)); *Bausch*, 2006 WL 1524590, at *4 (reducing deference to plaintiff's choice of forum where plaintiff was not a resident of forum district, forum state had no material connection to underlying events, and other 28 U.S.C. § 1404 factors were equally balanced). A plaintiff's choice of forum may also be disturbed where "the balance of several factors strongly favor [transfer]." *Butcher*, 1998 WL 437150, at *9 (minimizing weight due plaintiff's choice of forum). Here, three of the four plaintiffs are residents of other states, the operative facts bear no connection to New York, and the balance of factors strongly favors transfer, so any weight due plaintiffs' choice of forum is "significantly diminished."

Indeed, with respect to all three plaintiffs who filed suit purporting to represent a nationwide class, including Unisystems, "little weight is given to the plaintiffs' choice" because "numerous potential plaintiffs" could each "make a showing that a particular forum is best suited

for the adjudication of the class' claim." *Id.* at *10 (internal quotation marks omitted); *accord In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995); *Quan*, 2008 WL 111167, at *3.[9]

### 7. Transfer Will Serve The Interest of Justice

Finally, in assessing the interest of justice, courts consider, *inter alia*, how far the case has progressed in the transferor district, *e.g.*, *Butcher,* 1998 WL 437150, at *12; relative docket congestion of the transferor and transferee courts, *id.* at *11; *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 578-79 (S.D.N.Y. 2001); issues of judicial economy, including the existence of pending litigation involving similar issues in other jurisdictions, *In re AtheroGenics Sec. Litig.*, No. 05 Civ. 00061, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006), and the balance of other factors, including the locus of underlying events, *see, e.g.*, *Dostana Enters. LLC v. Fed. Express Corp.*, No. 00 Civ. 0747, 2000 WL 1170134, at *7 (S.D.N.Y. Aug. 16, 2000). The interest of justice favors transfer here.

---

[9] The fact that three, virtually identical class actions have been filed in this district should not enter into this Court's analysis. Plaintiffs' counsel cannot create greater "weight" in their preferred venue merely by filing cookie-cutter complaints on behalf of multiple plaintiffs – particularly since those claims could easily have been brought in a single action. Certainly no weight should be accorded the recent filing of the *Nashua* suit in this district. When by letter dated November 30, 2007, State Street originally announced its intent to seek transfer of the two class actions then pending before the Court, the Nashua Plan's complaint was pending in the District of Massachusetts. Before a briefing schedule for State Street's motion had been established, Nashua unilaterally dismissed its action in Massachusetts and refiled in this district, no doubt in an attempt to undermine State Street's motion to transfer. Such manipulation of federal procedure should not add "weight" to plaintiffs' preferred forum where, as here, plaintiffs have filed suit in a foreign jurisdiction with no connection to the underlying events in dispute. *See O'Hopp v. ContiFinancial Corp.*, 88 F. Supp. 2d 31, 35 (E.D.N.Y. 2000) (granting transfer from E.D.N.Y. to S.D.N.Y. – where largely identical class action complaints had been filed in both jurisdictions, the S.D.N.Y. plaintiffs then voluntarily dismissed their suits pursuant to Fed. R. Civ. P. 41(a)(1), refiled suit in E.D.N.Y., and opposed transfer to S.D.N.Y. – because court concluded that class plaintiffs' maneuvering had been "motivated by forum shopping," particularly given that the case had a "far stronger relationship" to S.D.N.Y. and "little connection" to E.D.N.Y.); *see also* 1A Fed. Proc. § 1:839 (West 2007) (noting that § 1404(a) transfer is "designed to remedy the evils of forum shopping").

First, all four cases are in the earliest stages of litigation.  The Court has not resolved any motions, and, with the exception of very limited discovery on the issue of standing in the *Prudential* action, no substantive discovery has occurred in any of the cases before the Court. *See Butcher*, 1998 WL 437150, at *12 (observing that four-and-a-half month old litigation was "at an early stage" appropriate for transfer even after deciding summary judgment motion). Second, transfer to the District of Massachusetts may well promote speedy resolution of these matters.  The Southern District of New York is, without doubt, "one of the busiest courts in the nation," which weighs against "retention of a case such as this, with only minimal connections to New York."  *Colida v. Panasonic Corp. of N. Am.*, No. 05 Civ. 5791, 2005 WL 3046298, at *4 (S.D.N.Y. Nov. 10, 2005); *accord Royal & Sunalliance*, 167 F. Supp. 2d at 579.  Over five times as many cases are filed in the Southern District of New York as are filed in the District of Massachusetts.  *See* U.S. Federal Court Management Statistics, *available at* http://www.uscourts. gov/caseload2007/tables/C03Mar07.pdf (last visited Jan. 9, 2008); *cf. Butcher*, 1998 WL 437150, at *11 (noting that "the total number of filings in the Southern District of New York are nearly six times greater than in the [proposed transferee forum]").

As this Court has recognized, even more telling is the number of cases pending *per judge* in each district.  *See In re AtheroGenics*, 2006 WL 851708, at *5.  Here, the number of pending cases per judge in the District of Massachusetts – 351 – is substantially lower than in the Southern District of New York – 716.  *See* U.S. Federal Court Management Statistics, *available at* http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited Jan. 14, 2008).

Transfer will also promote judicial economy and efficiency.  Although no similar case against State Street is *currently* pending in the District of Massachusetts, a suit has been filed

against State Street in the Southern District of Texas that raises similar claims.[10]  *See* Notice of

Removal, *Memorial Hermann Healthcare Sys. v. State Street Bank and Trust Co.*, No. 07 Civ.

4089 (S.D. Tex. Dec. 3, 2007).  State Street has moved to transfer that case – also in its earliest

stages – to the District of Massachusetts, for the same reasons supporting transfer here.  (Decl. ¶¶

42-43.)  *See* Mot. to Transfer Venue, *Memorial Hermann Healthcare Sys.*, No. 07 Civ. 4089

(S.D. Tex. Jan. 30, 2008).

Litigation of these five cases in a single forum will serve the interest of justice by

avoiding duplicative litigation as well as the possibility of inconsistent outcomes.  *See, e.g.*,

*Columbia Pictures Indus., Inc. v. Fung*, 447 F. Supp. 2d 306, 309 (S.D.N.Y. 2006) ("There is a

strong policy favoring the litigation of related claims in the same tribunal in order that pretrial

discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby

saving time and expense for both parties and witnesses, and inconsistent results can be

avoided.").  Under the factors informing the Court's decision, that forum is Massachusetts, not

New York.  *See Dostana*, 2000 WL 1170134, at *7 (finding that the interest of justice would be

served by transfer "given the balance of the other factors and, in particular, the lack of material

connection between this forum and the operative facts of the dispute").

* * *

Courts evaluate motions to transfer venue by examining the "totality of the

circumstances."  *Cartier*, 510 F. Supp. 2d at 348; *Mitsui Marine & Fire Ins. Co. v. Nankai Travel*

---

[10] The *Nashua* case was, of course, originally filed in Massachusetts.  *See* Complaint, *Nashua I*, No. 07 Civ. 12021 (D. Mass. Oct. 24, 2007).  This Court has treated related cases in the proposed transferee forum that were voluntarily dismissed by plaintiffs following the filing of a transfer motion in the transferor forum as related litigation "pending" in the proposed transferee district for purposes of deciding a § 1404(a) motion to transfer.  *See In re AtheroGenics*, 2006 WL 851708, at *3 (concluding that four related actions in transferee district favored transfer, even though plaintiffs had voluntarily dismissed those actions after defendants filed transfer motion).

*Int'l Co.,* 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003).  Here, where the Court has the opportunity to determine at the very outset of the litigation the appropriate federal forum for litigating these related actions, the relevant factors weigh strongly in favor of transfer.  The center of gravity is squarely in Massachusetts, where the overwhelming majority of the party and non-party witnesses reside.  Under the allegations in the four complaints, any alleged breach of fiduciary duty arising out of State Street's investment management of fixed income funds and its related representations occurred in Massachusetts.  To the extent that the complaints' claims implicate state law, all of the governing agreements provide for the application of Massachusetts law.  Against these factors, plaintiffs' choice of forum is entitled to little weight since three of the four plaintiffs have brought suit in a foreign forum, and none has asserted claims bearing any connection to New York.  For all of these reasons and to promote judicial economy, the interest of justice tips heavily in State Street's favor.  Transfer to the District of Massachusetts – where State Street seeks to transfer a similar case pending in another jurisdiction – will promote the expeditious resolution of these matters, avoid the possibility of inconsistent outcomes, and eliminate the waste of time and money that would inevitably result if the parties were required to litigate a Massachusetts-based dispute in New York.

## <u>CONCLUSION</u>

For the foregoing reasons, State Street respectfully requests that this Court enter an order pursuant to 28 U.S.C. § 1404(a), transferring all four actions to the United States District Court for the District of Massachusetts.


Dated: New York, New York
        February 4, 2008


ROPES & GRAY LLP                          PAUL, HASTINGS, JANOFSKY
                                             & WALKER LLP

By: /s/ Jerome C. Katz
Jerome C. Katz                            By: /s/ Barry Sher
1211 Avenue of the Americas               Barry Sher
New York, New York, 10036-8704            Daniel B. Goldman
Tel: (212) 841-5700                       75 East 55th Street
jerome.katz@ropesgray.com                 New York, New York 10022-3205
                                          Phone:  (212) 318-6000
Harvey J. Wolkoff                         barrysher@paulhastings.com
Robert A. Skinner                         dangoldman@paulhastings.com
Olivia S. Choe
One International Place                    *Attorneys for Defendants State Street Bank*
Boston, MA  02110                         *and Trust Company and State Street Global*
Tel: (617) 951-7000                       *Advisors, Inc. in the Prudential Action*
harvey.wolkoff@ropesgray.com
robert.skinner@ropesgray.com
olivia.choe@ropesgray.com

*Attorneys for Defendants State Street Bank*
*and Trust Company and State Street Global*
*Advisors, Inc. in the Class Actions*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be served on all counsel registered as filing users on ECF by electronic service pursuant to Fed. R. Civ. P. 5(b)(3). I further certify that a true and correct copy of the foregoing document will be served on all counsel not registered as filing users by electronic mail.

/s/ Jerome C. Katz
Jerome C. Katz