UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. ERISA LITIGATION<br><br>This document relates to:<br><br>07 Civ. 9319<br>07 Civ. 9687<br>08 Civ. 0265 | 07 Civ. 8488 (RJH)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Richard J. Holwell, District Judge:

This is a consolidated group of class actions brought pursuant to sections 409(a) and 502(a)(2) and (3) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Lead plaintiffs are, and seek to represent a class of, ERISA plans that invested in certain bond funds managed by defendant State Street Bank and Trust Co. ("State Street"). Plaintiffs allege that defendant's risky, undisclosed investment strategies, including highly leveraged positions in mortgage-backed securities, caused the putative class more than $150 million in losses during the third quarter of 2007.

Now before the Court is lead plaintiffs' motion for preliminary approval of an $89.75 million settlement to which the parties agreed in June, 2009. After careful review, the Court has signed and issued, with only minor changes, plaintiffs' proposed order approving on a preliminary basis the terms of the settlement and conditionally certifying a settlement class. The Court notes, however, that defendant has opposed preliminary approval of the proposed settlement contending that ongoing settlement negotiations with the Securities and Exchange Commission ("SEC") make it "currently" impossible to determine whether the proposed settlement is "fair, reasonable, and adequate." The

Court now issues this companion opinion and order to address defendant's novel contention.

### I.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

On June 26, 2009, defendant signed a binding term sheet for an $89.75 million settlement with the putative class. (Fredericks Decl. Ex. A.) Defendant nevertheless opposes preliminary approval on the ground it is potentially unfair, given that the class members *might* be able to obtain indirectly a larger recovery through a possible future settlement of an action that *might* be brought by the SEC based on the same alleged misconduct that underlies these actions. The agency began investigating State Street in 2007 and issued it a Wells Notice on June 25, 2009, the day before defendant executed the ERISA settlement term sheet.[1] According to State Street, discussions with the SEC for settlement of potential civil charges have been ongoing since late July. Defendant asks the Court to defer ruling on plaintiffs' preliminary approval motion until these discussions with the SEC are "resolved."

Given Rule 23(e)'s exclusive concern for the interests of *class members*, defendant necessarily adopts in its opposition papers the unusual posture of advocate for the ERISA plans that it is alleged to have harmed. It argues that the class might do better if it awaits the outcome of the SEC discussions. Notwithstanding State Street's laudable efforts to protect the interests of the ERISA plans, however, the ongoing SEC negotiations provide no basis for the denial or postponement of preliminary approval.

---

[1] A Wells Notice "notifies the recipient that the SEC's Enforcement Division is close to recommending to the full Commission an action against the recipient and provides the recipient the opportunity to set forth his version of the law or facts." *SEC v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1163 n.1 (9th Cir. 2007)(quoting *Carlson v. Xerox Corp.*, 392 F. Supp. 2d 267, 279 (D. Conn. 2005).

Preliminary approval is "at most a determination that there is what might be termed 'probable cause' to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Assoc.*, 627 F.2d 631, 634 (2d Cir. 1980). Put differently, at the preliminary approval stage, the Court need decide only if the proposed settlement "fits within the range of possible approval." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209-10 (S.D.N.Y. 1995)(citations omitted). Final approval will hinge upon whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3). In making this final determination, courts consider numerous factors, including that which is most pertinent here, the "range of reasonableness of the settlement fund in light of the best possible recovery." *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Defendant argues that its ongoing negotiations with the SEC render it impossible to determine, at this juncture, whether the proposed settlement in this case is "fair, reasonable, and adequate." Through cryptic and selective reference to its discussions with the SEC, defendant suggests that a future SEC settlement might include a "fair fund" that would provide greater recovery to the prospective class members than would this proposed settlement. The problem with this argument is that, by all indications, the ERISA settlement would not jeopardize any further recovery via a fair fund. Indeed, defendant does not seriously contend that an SEC fair fund would exclude those entities that choose to participate in this settlement.[2] Rather, defendant's primary argument

---

[2] In this Court's experience, it is not the agency's practice to exclude participants in class action settlements from fair fund compensation. A review of prior SEC settlements corroborates this experience, *see, e.g.*, Enron Victim Trust Website, *available at* http:www.enronvictimtrust.com/FAQ.aspx#30; *SEC v. Time Warner, Inc.*, Notice to Possible SEC Fair Fund Claimants, *available at* http:www.sec.gov/litigation/litreleases/2006/notice19763.pdf, as does widespread recognition of the principle that private actions are an "essential supplement" to civil enforcement actions brought by the

3

appears to be that funds recovered in this case might offset against monies the class could receive from a fair fund, such that the recovery here would be carved out of the total recovery due under the fair fund. (Def. Opp. at 5-6; Def. Sur-Reply at 2-3.) Defendant is concerned that in the event of such a carve-out, the class would wind up paying professional fees on funds obtained through the class action settlement that it otherwise could have recovered expense-free from the fair fund.

Even the prospect of an off-set, however, is unduly speculative. Defendant has not affirmatively identified a precedent example, and perusal of prior SEC settlements indicates a substantial likelihood that there would be no offset in an SEC-State Street settlement, depending on how the fair fund is structured. *See, e.g,, In re Mass. Fin. Servs. Co.*, File No. 3-11393 (Feb. 5, 2004), *available at* http://www.sec.gov/litigation/admin/ia-2213.htm (SEC settlement barring respondent from claiming penalty portion of fair fund as offset in related investor actions). More importantly, even if an off-set were standard agency procedure, the mere prospect of saving professional fees through future settlement of an as yet unfiled SEC action is not sufficient to remove the proposed settlement from the "range of possible approval" for the purposes of preliminary approval. *See In re Prudential*, 163 F.R.D. at 210. The ERISA settlement is, as plaintiffs point out, a bird in the hand. Defendant has signed a binding term sheet. (Fredericks Decl. Ex. A.) Upon preliminary approval, the settlement sum will be deposited into an escrow account and begin accruing interest. Pending only final fairness approval, the class will receive the net value of its $89 million settlement.

---

SEC. *See In re EVCI Career Colleges Holding Corp.*, 2007 WL 2230177, at *15 (S.D.N.Y. July 27, 2007)(quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 313 (2007).

There is no such certainty as to if, when, and under what terms the SEC fair fund will be established.

Having dispensed with the argument that the potential for a larger SEC settlement bars preliminary approval, the Court notes that the proposed ERISA settlement otherwise appears manifestly "fair, reasonable, and adequate." The $89.75 million figure represents about fifty-eight percent of the class members' capital losses, a favorable recovery in light of the substantial time, expense, and risk that litigation to verdict would entail. Furthermore, the agreement springs from intensely adversarial negotiations; both sides are represented by able, reputable counsel, and they reached this settlement through a drawn-out mediation process presided over by Judge Nicholas Politan (U.S.D.J., Ret.). On these facts, the settlement proposal easily meets the preliminary approval standard. *See In re Prudential*, 163 F.R.D. at 210.

## II.   NOTICE LANGUAGE

The parties have submitted competing proposals for language informing the class members of the potential for a settlement between State Street and the SEC. Plaintiffs have submitted language informing the class members that nothing in the proposed settlement interferes with their ability to recover additional amounts through any future SEC settlement. Defendant petitions the Court for language explaining that "an alternative recovery—one that potentially exceeds the class settlement—may well be forthcoming, and that failure to opt out of the settlement may prevent [the class members] from achieving a greater recovery."

Notice to class members should "inform[] members that their rights are in litigation, and alert[] them to take appropriate steps to make certain their individual

5

interests are protected." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980). Furthermore, Courts must safeguard against "misleading" communications. *Id*. Though the Second Circuit has in the past encouraged inclusion of information regarding other pending actions, *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.,* 396 F.3d 96, 116 n.22 (2d Cir. 2005), this encouragement was aimed at situations where participation in a settlement would preclude other forms of potential relief. Here, for reasons already stated, there is no reason to believe that participation in this settlement will preclude further recovery from an SEC fair fund. Furthermore, the possibility that State Street will pay to settle future SEC charges (if such charges are ever brought), and that a portion of any monetary settlement might go into a fair fund for harmed investors, is the sort of "highly speculative" information that, if included in the class notice, would be "more likely to hinder informed decision-making by class members than advance it." *Weinberger v. Kendrick*, 698 F.2d 61, 70 n.11 (1982). For that reason, the Court finds that the most prudent option is to inform the class of the only concrete facts that exist: the issuance of the Wells Notice and the ongoing negotiations between State Street and the SEC. Limiting the notice language to these facts avoids nettlesome speculation but at the same time allows class members to "probe more deeply," if they wish, into the potential interplay between a live SEC investigation and a class settlement.[3] *Id*. at 71. To that effect, the Court orders that the following language be included on page 9 of the class notice, in a new subsection (A)(3) titled "SEC Investigation":

> On June 25, 2009, the Securities and Exchange Commission ("SEC") sent
> State Street what is known as a "Wells Notice" informing it that the SEC
> is considering instituting civil charges against State Street based on the

---

[3] The Court notes that the putative class members in these actions, as ERISA plans, are sophisticated entities, not individuals.

same facts alleged in the Complaint. State Street has advised Plaintiffs' Co-Lead Counsel that it is in ongoing negotiations with the SEC about the potential charges.

### III. Language Enjoining Unauthorized Communications between Defendant and the Class

Plaintiffs request that the Court instruct defendant not to communicate with class members without permission from plaintiffs' counsel or the Court. Because there is no indication that defendant has attempted any such communication, the Court finds that such language is unnecessary.

### CONCLUSION

For the reasons stated, preliminary approval of the potential settlement is granted in the form specified in the Court's companion order of this date.

SO ORDERED.

Dated: New York, New York
       October 28, 2009

_____
Richard J. Holwell
United States District Judge